UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. LAETHEM,

    Plaintiff,                                     Civil Action No. 06-10213

v.                                             HON. ARTHUR J. TARNOW
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Laethem brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (Tr. 48-50). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1] I recommend that Defendant's Motion for Summary Judgment be DENIED, Plaintiff's Motion for Summary Judgment GRANTED, and the case remanded for an award of benefits.

---

[1] On November 21, 2006, pursuant to Administrative Orders 06-AO-031 and 06-AO-032, the Clerk of the Court ordered this case reassigned by random method from the Honorable Wallace Capel, Jr. to the undersigned.

## PROCEDURAL HISTORY

On June 2, 2003, Plaintiff filed an application for DIB, alleging disability as of May 13, 2003 (Tr. 48). After denial of his initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on March 8, 2005 in Detroit, Michigan before Administrative Law Judge (ALJ) Karen J. Goheen.[2] Plaintiff, represented by attorney William Watkinson, testified. (Tr. 141-158). Jason Brown, a Vocational Expert (VE), also testified (Tr. 158-164). On July 28, 2005, ALJ Goheen found that although Plaintiff was unable to perform any of his past relevant work, he retained the capacity to perform a significant number of jobs in the national economy (Tr. 20). On January 28, 2005 the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on January 17, 2006.

## BACKGROUND FACTS

Plaintiff, born November 2, 1947, was age fifty-seven when the ALJ issued her decision (Tr. 48). He received a general educational development certificate ("GED") and worked previously as an machine repairman (Tr. 63, 68). Plaintiff alleges an onset date of May 13, 2003 as a result of an industrial accident resulting in the amputation of four of his left hand fingers (Tr. 62).

---

[2]The hearing transcript shows that the hearing took place in Detroit (Tr. 137), however, Plaintiff received a notice of hearing one month before the proceeding stating that the hearing would be held in Oak Park (Tr. 21-22).

### A.     Plaintiff's Testimony

Plaintiff, 57, stated that he was right-handed, stood 5' 8" and weighed 200 pounds (Tr. 141). Plaintiff reported that he lived in a two story single-family dwelling with his wife (Tr. 141-142). He testified that he attained a GED, and was trained in heavy equipment repair during his stint in the Army, adding that he had been honorably discharged (Tr. 142-143). He reported reading magazines, newspapers and books on a regular basis (Tr. 142).

Plaintiff, stating that he drove himself to the hearing, indicated that his former job as a repairman sometimes required him to lift over 50 pounds (Tr. 143-144). He testified that after his accident in 2001, he continued to work for another two years before applying for disability, adding that subsequent to the accident, he was unable to perform "heavy disassembly" (Tr. 144). He estimated that his injury prevented him from performing 30 to 40 percent of his pre-accident job duties (Tr. 152). He stated that he discontinued work in 2003 after his employer ceased operations (Tr. 145-146). Plaintiff acknowledged that he had received a lump-sum settlement from Workers' Compensation (Tr. 147).

Plaintiff testified that on a "typical day," he would play with his dogs, check his email, and help his wife with chores, adding that he continued to perform some yard work and snow removal (Tr. 154). He admitted that he was able to use his left hand "as an assist" to the other hand for gross lifting "a bag of groceries or a box" (Tr. 155-156).

### B.     Medical Evidence

### i. Treating Sources

On April 2, 2001, Plaintiff sought emergency treatment after the traumatic amputation of his left hand fingers in a machine accident (Tr. 95). On April 10-11, 2001, Michigan Hand Rehabilitation Center performed an evaluation of Plaintiff's condition, noting scar adhesions and a decreased range of motion in his remaining finger stumps (Tr. 103). Plaintiff was prescribed therapeutic exercise and massage along with fluidotherapy for wound care (Tr. 104). May 3, 2001 treating notes show that Plaintiff completed all exercises "without difficulty" (Tr. 108). Therapy notes for the duration of May and June, 2001 show similar results (Tr. 112, 116). On April 17, 2002, Mehul M. Mehta, M.D., a hand surgeon, performed an examination, opining that Plaintiff could "work his regular job" (Tr. 123). In August, 2002, Dr. Mehta reiterated his earlier finding, stating that Plaintiff could "continue to work without restrictions" (Tr. 122).

### ii. Consultive Sources

A Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that despite the amputation of his first and second fingers along with a portion of fingers three and four, Plaintiff demonstrated a "good range of motion in the remaining left hand joint," finding that he could "work without restrictions"[3] (Tr. 89).

In June, 2003, Jerry Taylor, D.O., performed an examination, noting that Plaintiff continued to experience difficulty with fine manipulations such as buttoning and grasping

---

[3] The date of the assessment is not listed in the transcript or on the report itself.

small objects (Tr. 124). Dr. Taylor reported that Plaintiff's former work required him to lift and carry 50-75 pounds (Tr. 125). He concluded that Plaintiff was precluded from his former job by his current inability to use a lathe, power tools, screw driver, plyers, or pry bars, adding that he was unable to "climb ladders and unable to perform heavy lifting or to grasp with the left hand" (Tr. 126-127).

On February 21, 2005, Samuel I. Goldstein, Ph.D., L.P., CRC examined Plaintiff, finding that the April, 2001 injury precluded transferring his job skills to another position (Tr. 130). Goldstein opined:

> "[A]s a practical matter, given his age, his education, his work experience, his particular skills and his particular physical limitations[,] he is now essentially a one-handed individual. I do not believe that he could safely work around machines. . . . I do not believe that any of his skills [,] considerable though they may have been [,] would transfer to any "one-handed jobs"

(Tr. 131). Goldstein added that the fact that Plaintiff resumed work for the same company following the accident did not establish the presence of transferrable skills, instead, attributing his continued employment to "his long term association" with his company, and the fact that he could do "accommodated work," such that "[h]e could do anything he could do because the employer simply wanted him around and they kept him until the company went out of business several years later." (Tr. 131).

### C.    Vocational Expert Testimony

VE Jason Brown classified Plaintiff's former work as a machine repairman (Dictionary of Occupational Titles Code 638.281.014) as skilled at the medium to heavy level of exertion (Tr. 59, 159). The ALJ then posed the following hypothetical question:

> "Now if I ask you to assume an individual of the same age, education and work experience as the claimant, no . . . exertional limitations. Actually the only limitation is of, of a non-dominant upper extremity because of the loss of some fingers, has use of only the thumb and truncated index finger but it is available as an assist to the dominant hand, can perform pinching maneuvers, however, can such a - - could such a person do any of the past work?"

(Tr. 160). The VE testified that Plaintiff's left hand limitations precluded both his past work, stating further that although his former job afforded "lots of transferability," it was "obviated" by the amputation of fingers, leaving Plaintiff without transferrable skills (Tr. 159-161). The VE found that Plaintiff retained the ability to perform unskilled jobs at the light to medium levels of exertion such as custodian, security guard, cashier, toll booth worker, parking attendant, and information clerk, estimating that 2,500 of hundred of such jobs existed in the metropolitan area and 5,000 statewide (Tr. 162). He approximated that the job numbers were dividing evenly between work at the light and medium levels of exertion (Tr. 163). The VE concluded his testimony by stating that his findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 164).

### D.    The ALJ's Decision

Based on Plaintiff's June 2, 2003 application, ALJ Goheen held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 19). Citing Plaintiff's 2001 work accident, she found that Plaintiff experienced "musculoskeletal and connective tissue injuries" holding that although these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, they did not meet or medically equal one of the

impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4 (Tr. 19).

The ALJ found that while Plaintiff was unable to perform his past work, he retained the residual functional capacity ("RFC") to perform a range of unskilled work at the medium exertional level, limited by the "use of only the thumb and truncated index finger" of the non-dominant hand (Tr. 20).  Adopting the VE's job findings, the ALJ found that Plaintiff could perform the work of a custodian, security guard, cashier, or information clerk, concluding that 850 to 1250 of such jobs existed in the local economy (Tr. 20).

The ALJ found Plaintiff's subjective complaints of limitations "not very credible," noting that he worked for an additional two years after his accident (Tr. 16).  She cited a consulting physician's opinion that Plaintiff did not possess any exertional limitations, observing further that Plaintiff engaged in a full range of activities such as driving long distances, performing outdoor chores, and walking his dog (Tr. 17).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**[4]

### A. Medium Exertional Level

Plaintiff disputes the ALJ's determination that he retained the capacity to perform medium work, arguing that the administrative finding stands unsupported by substantial evidence. *Plaintiff's Brief*, 9-11. Plaintiff contends that the ALJ's conclusion founders on her faulty interpretation of his treating physician's notes along with misplaced reliance on a state agency analysis "so devoid of findings that it did not list any manipulative limitations of Plaintiff's left hand." *Id*. at 10.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" whereas light work entails lifting up to 20 pounds with an ability to lift 10 pounds frequently. 20 C.F.R. § 416.967(b)(c). Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.04, a finding of disabled would be mandated in the case of a claimant of advanced age (over 55) with a high school education and no transferable skills relegated to light exertional work. Thus the question of whether Plaintiff can perform medium or only light work is determinative of this case.

The ALJ cites two medical sources in support of her non-disability finding.

---

[4]In addition to the issues he presents in this section, Plaintiff contends that the ALJ erroneously relied upon his post-accident work activity to support her non-disability finding. *Plaintiff's Brief,* 9. However, by finding that Plaintiff was disabled at Step Five of her analysis rather than Step Four, she has conceded that Plaintiff is unable to perform his past relevant work or transfer acquired skills to another position (Tr. 20, ¶10). Accordingly, the Court will omit discussion of this argument.

However, neither supports her finding that Plaintiff retains an ability to perform medium work.  First, the ALJ premises her conclusion on the state agency analysis, which finds that Plaintiff can "work without restrictions," apparently citing treating physician Mehta's post-accident treating notes (Tr. 17, 89,120-123).   In actuality, although Plaintiff had resumed work with his previous employer, nowhere do Mehta's post-accident treating notes support the ALJ's conclusion that Plaintiff could perform at the medium exertional level (Tr. 120-123).  In fact, the ALJ acknowledges as much in the next paragraph, stating that during the period, in question, Plaintiff's duties were limited to less physically demanding "accommodating work," rather than his previous range of job requirements (Tr. 17).

In addition, the state agency assessment is of generally dubious value.  A Physical Residual Functional Capacity Assessment  typically consists of a four page checklist form documenting a claimant's exertional and non-exertional limitations with additional space for the reviewing physician's notes.  In the present case, the reviewing physician not only failed to sign or date the assessment but refrained from completing *any* of checklists (Tr. 88-91).  Most shockingly, the assessment apparently found the *absence* of the manipulative limitations such as reaching, handling, and fingering despite the fact that Plaintiff has had most of the joints of his left-hand fingers amputated (Tr. 90).  The state agency report "finding" that Plaintiff could return to work "without restrictions" is nothing more a conclusory statement unsupported by any objective medical evidence.

The ALJ's second "source" of support is Dr. Mehta's notes themselves, which she

similarly misinterprets to support her finding that Plaintiff can perform medium work (16). Again, Dr. Mehta's conclusion that Plaintiff could return to his job "without restrictions" was related to the Plaintiff's "make-weight" job charitably given to him by his employer (Tr. 131), and in no way supports a conclusion that in the real world, Plaintiff could perform medium work.  Neither the ALJ's erroneous reading of Mehta's opinion nor the similarly flawed rehash by the state agency reviewer constitutes substantial evidence.

Apart from Dr. Mehta's notes and the less than satisfactory State Agency report, neither of which constitute substantial evidence, the record contains *no* evidence, clinical or otherwise, supporting the ALJ's conclusion that the Plaintiff has the RFC for medium work. At Step Five, of course, the Commissioner has the burden of proof.  Absent any substantial evidence that Plaintiff has the RFC to do work above the light exertional level,  and because the Plaintiff was over the age of 55 with a high school education and no transferable skills, 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.04 mandates a finding of disability.  For this reason, the case must be remanded for an award of benefits.

## B.  Vocational Expert Testimony

Plaintiff contends further that the administrative decision's reliance on erroneous VE job findings also requires remand. *Plaintiff's Brief*, 13. Plaintiff disputes the VE's characterization of the jobs information clerk, security guard, and cashier as medium exertional work, noting that the DOT describes all these jobs as exertionally light. *Id.*, Exhibit, Tr. 163.  He notes, correctly, that of the jobs cited by the VE, only "custodian" is

classified by the DOT as medium. *Id.*

As explained in the preceding section, there is no substantial evidence supporting the conclusion that Plaintiff can perform medium work. Therefore, to the extent that it calls for a description of jobs at the medium exertional level, the hypothetical question is defective because it does not accurately portray the Plaintiff's limitations. *See Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

Of course, if Plaintiff can only perform light work, he is entitled to benefits because of his age, education and the non-transferability of his former job skills. However, even assuming that he could do medium work at the unskilled level, the ALJ found that only 850 to 1,250 such jobs exist in the local economy (Tr. 19). That may well be insufficient to constitute a "significant number."

Although the Sixth Circuit has recognized that it is "impossible to set forth one special number as the boundary between a 'significant number' and an insignificant number of jobs," the court found has that as few as 1,350-1,800 jobs in the local economy constituted a significant number. *Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir. 1990)*, citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988). In *Hall*, the Court found that the factors to be considered in determining whether work exists in significant numbers include the level of the claimant's disability and the reliability of the vocational expert's testimony. *Id.* Given that this Plaintiff is, for all practical purposes, a one-armed worker, and that of the four jobs cited by both the VE and the ALJ, only one (custodian) is

classified at the medium level (perhaps rendering the true number of medium-level jobs even less that 850), the Court concludes that there remains a serious question as to whether there is significant work the Plaintiff can perform.[5]

Were this the only issue presented, Plaintiff would at a minimum be entitled to a remand for further proceedings regarding the number of available jobs. *See Sanchez v. Barnhart*, 329 F.Supp.2d 445, 454 (S.D.N.Y. 2004) (remanding for "further consideration and clarification," citing the need to "make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test"). Again, however, since there was no substantial evidence showing that Plaintiff could indeed perform medium work, he is entitled to a remand for an award of benefits, notwithstanding any confusion about whether medium, unskilled work exists in significant numbers.

## CONCLUSION

For these reasons, I recommend that the Defendant's Motion for Summary Judgment be DENIED, that the Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be remanded for an award of benefits.

---

[5] The Court recognizes that other Circuits have found that in some circumstances, fewer than 850 jobs constitute a significant number. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs).

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right to appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 46, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local* 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 24, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 24, 2007.

                                              S/Gina Wilson
                                              Judicial Assistant